IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDER ATKINS, an individual,

                Plaintiff,

      v.

VCE THEATERS, LLC, an Oregon Limited
Liability Company, d/b/a Studio One
Theaters; and JASON LENSCH, an
individual,

                Defendants.

Case No. 3:23-cv-01332-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Alexander Atkins ("Atkins") moves for an order preliminarily certifying a

collective action under the Fair Labor Standards Act ("FLSA"). (Atkins' Mot. Certify FLSA Sec.

216(b) Collective Action ("Atkins' Mot."), ECF No. 13.) The Court has jurisdiction over this

matter pursuant to 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a

magistrate judge pursuant to 28 U.S.C. § 636(c). For reasons explained below, the Court grants

Atkins' motion.

///

///

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

Defendant VCE Theaters, LLC, which does business as Studio One Theaters ("VCE"), operates a seven-screen luxury movie theater in Portland, Oregon. (Defs.' Notice Removal, Ex. 1 ("Compl.") ¶ 5.) Defendant Jason Lensch ("Lensch," and together with VCE, "Defendants") worked at VCE as a manager during the relevant period. (*Id.* ¶ 10.)

Atkins worked at VCE as a "runner" between December 2022 and February 2023. (Defs.' Resp. Atkins' Mot. ("Defs.' Resp.") at 4, ECF No. 17; Compl. ¶ 11.) During his employment at VCE, Atkins learned that managers, supervisors, and/or other statutory employers were receiving funds from the line-level service employees' tip pool. (Compl. ¶ 10.) Atkins believed that managers participating in the line-level employees' tip pool was illegal and communicated that belief to his managers. (*Id.*) Atkins also began requesting an accounting from VCE managers for the tip pool distributions to confirm his belief, but he never received the requested accounting. (*Id.*) On or about February 8, 2023, Atkins reported to Lensch that he believed requiring employees to participate in the tip pool without their consent was illegal. (*Id.* ¶ 11; Atkins Decl. Supp. Atkins' Mot. ("Atkins Decl.") at 3-4, ECF No. 15.) In response, Lensch fired Atkins. (Compl. ¶ 11.)

On the basis of the foregoing events, Atkins filed this suit, individually and on behalf of other similarly situated individuals, alleging that Defendants required Atkins, and other similarly situated individuals, to participate in an illegal tip pool in violation of the FLSA. (*See generally* Compl.)

**DISCUSSION**

Atkins moves the Court for an order preliminarily certifying a FLSA collective action under 29 U.S.C. § 216(b). (*See generally* Atkins' Mot.) For reasons explained below, the Court grants Atkins' motion.

PAGE 2 – OPINION AND ORDER

## I.    FLSA PRELIMINARY CERTIFICATION

Atkins initially moved preliminarily to certify a collective action consisting of "all current and former employees of Defendant VCE who received a paycheck for a pay period in which they were required to participate in a tip pool that included managers, supervisors, or other statutory employers for work performed in Oregon." (*Id.* at 5.) In his reply, Atkins proposed a modified definition to include "[i]ndividuals[1] who received a paycheck for a pay period in which they were required to participate in a tip pool." (Atkins' Reply Supp. Atkins' Mot. ("Atkins' Reply") at 3, ECF No. 23.) Defendants generally do not oppose preliminarily certifying a collective but oppose Atkins' motion on the following grounds: (1) the proposed collective definition is overbroad and unfairly structured, (2) Atkins' requests for equitable tolling and equitable estoppel are inappropriate, and (3) the proposed notice is overly biased against Defendants and lacks key information. (Defs.' Resp. at 2-3.) Defendants are, however, willing to stipulate to preliminarily certifying a collective that includes "any current or former hourly, non-management employees of VCE . . . who, since June 28, 2020, either paid into or received payments out of any tip pool as a result of their employment with VCE." (*Id.* at 13.)

### A.    Applicable Law

The FLSA provides, in relevant part, that "[a]n action to recover the liability prescribed in [this subsection] may be maintained against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Procedurally, the Ninth Circuit has endorsed a two-step process for certifying FLSA collective actions based on the "similarly situated" requirement. *See Campbell v. City of Los*

---

[1] At oral argument, Atkins' counsel agreed that Defendants' proposal to replace "individuals" with "current or former . . . employees of VCE" is acceptable.

*Angeles*, 903 F.3d 1090, 1100, 1110 (9th Cir. 2018) (explaining that "it is now the near-universal practice to evaluate the propriety of the collective mechanism—in particular, [the] plaintiffs' satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification' process," and stating that "[t]here is good reason for this consensus" among the courts that have endorsed this approach) (simplified).

At step one, "at or around the pleading stage, [the] plaintiffs will typically move for preliminary certification." *Id.* at 1109 (citation omitted). "Preliminary certification . . . [is] conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of [29 U.S.C. §] 216(b)."[2] *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). The district court's analysis at this stage of the litigation is "typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)). The district court's "level of consideration is lenient, . . . [and is] loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* (simplified).

If the plaintiff survives step one of the certification process, step two "will come at or after the close of relevant discovery." *Id.* (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (per curiam)). At step two, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* (citations omitted). If the employer moves for

---

[2] Granting a motion for "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109 (first citing 1 McLaughlin on Class Actions § 2.16; then citing 7B Fed. Prac. & Proc. Civ. § 1807; and then citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989)).

decertification, the district court "will then take a more exacting look at the plaintiffs' allegations and the record." *Id.* (first citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007); and then citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)). "Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the 'similarly situated' question, and may be combined with cross-motions for summary judgment." *Id.* at 1109-10 (citation omitted).

### B.    Analysis

#### 1.    Collective Definition

Defendants argue that the Court should reject Atkins' collective definition for two reasons: (1) the collective definition is improperly structured because it is designed to be "fail safe," and (2) the proposed collective is overbroad because it includes individuals who are not "similarly situated" to Atkins. (Defs.' Resp. at 3-5.)

#### a.    Fail Safe

Defendants argue that the Court should reject Atkins' collective definition because it is "fail safe," meaning it inappropriately "employs criteria that depend on the merits and final outcome of [Atkins'] legal claims." (Defs.' Resp. at 4.) Specifically, Defendants argue that if the ultimate factfinder determines that Defendants are not liable because no "managers, supervisors or other statutory employers" participated in the tip pools, then the collective as currently defined would not exist. (*Id.* at 4-5, further arguing that in such a scenario, Defendants are the only parties assuming any litigation risk.) Atkins responds that Defendants' "fail-safe" theory is disfavored in the Ninth Circuit and does not apply to FLSA collective actions. (Atkins' Reply at 4-5.)

"A fail-safe class is commonly defined as limiting membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the

merits." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (citation omitted); *see also Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 235 (C.D. Cal. 2018) (noting that some courts have disfavored fail-safe classes "because they only allow for two possible results: either the class members win, or, 'by virtue of losing,' fall outside the definition of class membership and are thus not bound by the judgment") (citations omitted).

As an initial matter, the Ninth Circuit has never applied a blanket prohibition of fail-safe classes. *See, e.g.*, *Sevilla v. Aaron's, Inc.*, No. CV 17-4053-DMG (EX), 2019 WL 2879874, at *4 (C.D. Cal. Mar. 25, 2019) ("Given the Ninth Circuit's indication that courts should not refuse to certify a [Rule 23] class for being failsafe, the Court declines to do so here." (first citing, *inter alia*, *Melgar*, 681 F. App'x at 607; then citing *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 721-22 (9th Cir. 1999); and then citing *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001))); *Vizcaino*, 173 F.3d at 721-22 (rejecting the district court's holding that the class definition of "common law employees" improperly "relies on a legal conclusion to define membership in the class" because "[i]t is implicit in the definition of the class that its members are persons who *claim* to have been (or to be) common law employees who were denied [employee stock purchase plan] benefits" and "[t]hat under this definition ultimate success may turn on resolution of a disputed legal issue does not make it circular").

In any event, Atkins' modified collective definition—removing the clause "managers, supervisors, or other statutory employers"—addresses Defendants' concerns about the impact of including those disputed legal terms in the collective definition. Because the modified definition—"[i]ndividuals who received a paycheck for a pay period in which they were required to participate in a tip pool"—does not require a legal analysis to determine who is included in the collective, the definition steers clear of any fail-safe concerns. *See Costa v. Apple, Inc.*, No. 23-

CV-01353-WHO, 2023 WL 8101980, at *4 (N.D. Cal. Nov. 21, 2023) (finding that the plaintiffs' modified collective definition was an "appropriate response to [the defendant]'s concern and will mitigate against any risk that the collective constitutes a 'fail-safe' collective").

###### b.      Similarly Situated

Defendants also oppose Atkins' proposed collective definition on the grounds that the definition is overbroad and fails adequately to identify "similarly situated" persons. (Defs.' Resp. at 5.) Specifically, Defendants argue that Atkins' definition improperly includes employees who participated in a different tip pool than Atkins, employees who worked during a different time period, and "the very same managers and supervisors who, according to plaintiff, cannot legally participate in VCE's tip pool in the first place." (*Id.*) Atkins responds that the potential collective members are sufficiently similarly situated to meet the "lenient" standard for preliminary certification. (Atkins' Reply at 5-8, citing *Campbell*, 903 F.3d at 1109.)

"There is no established definition of the FLSA's 'similarly situated' requirement, nor is there an established test for enforcing it." *Campbell*, 903 F.3d at 1111 (citing *Thiessen*, 267 F.3d at 1102). The Ninth Circuit has explained that "similarly situated" means that the "party plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id.* at 1114. In other words, "the FLSA requires similarity of the kind that allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* (simplified). This advantage can only be realized if the "party plaintiffs are alike in ways that matter to the disposition of their FLSA claims." *Id.* (citation omitted). "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (citing *Aragon v. Rep. Silver State Disposal, Inc.*, 292 F.3d 654, 659-60 (9th Cir. 2002)).

///

Atkins' modified collective definition includes VCE's current or former employees who received a paycheck for a pay period in which they were required to participate in a tip pool. (*See* Atkins' Mot. at 5; *see also* Atkins' Reply at 3.) Determining who was a manager or supervisor and for which pay periods, the different tip pools in which employees participated, and how Defendants managed the tip pools over the relevant time periods, are detailed factual analyses that go to the merits of Atkins' FLSA claim and are premature at this preliminary stage of the litigation. *See Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2020 WL 5731821, at *5-6 (D. Or. Aug. 12, 2020) (rejecting the defendants' argument that the plaintiffs could not satisfy the "similarly situated" requirement because the proposed collective included potentially exempt employees and finding that it was "premature to engage in fact-specific inquiries" that would be "required to determine whether the employee fits within one of FLSA's exemptions") (simplified), *findings and recommendation adopted*, 2020 WL 6112186 (D. Or. Oct. 16, 2020); *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 WL 3734368, at *5 (D. Or. July 28, 2014) ("[T]he substantive validity of Defendants' argument [opposing preliminary certification] delves into the merits of Plaintiffs' claims, which would be an inappropriate inquiry for the Court at this stage of the FLSA collective certification inquiry."); *see also Mitchell v. City of San Diego*, No. 3:17-cv-02014, 2018 WL 3729282, at *4 (S.D. Cal. Aug. 6, 2018) (noting that the defendant opposed preliminary certification because the proposed collective action included employees with "a wide variety of jobs involving different duties and responsibilities," and finding that the step one "analysis does not 'encompass an in-depth fact specific inquiry into topics such as job duties'" (quoting *White v. Rakhra Mushroom Farm Corp.*, No. 2:08-cv-00198-SU, 2009 WL 971857, at *4 (D. Or. Apr. 8, 2009))); *White*, 2009 WL 971857, at *4-6 (explaining that step one "typically . . . does not encompass an in-depth fact specific inquiry into topics such as job duties," noting

that the defendants argued that the plaintiffs and certain workers fell under an "agricultural exemption," and finding it "premature" to "decide exemption" at step one (quoting *McElmurry v. US Bank Nat'l Ass'n*, No. 3:04-00642-HU, 2006 WL 3908536, at *3 (D. Or. Dec. 8, 2006))).

Atkins plausibly alleges in his complaint and declaration (*see* Compl. ¶¶ 10-11; Atkins Decl. at 2) that he and other VCE employees were required to participate in a tip pooling policy that illegally included managers and supervisors. *See Wilson v. Decibels of Or., Inc.*, No. 1:16-cv-00855-CL, 2017 WL 3671360, at *4 (D. Or. July 12, 2017) ("In order to qualify for conditional certification, a plaintiff must demonstrate that the defendant followed a 'common policy or plan' in violation of the FLSA . . . . [T]his showing is based on the pleadings and affidavits submitted by the parties.") (simplified), *findings and recommendation adopted*, 2017 WL 3850273 (D. Or. Aug. 31, 2017); *Goudie v. Cable Commc'ns, Inc.*, No. 3:08-cv-00507-AC, 2008 WL 4628394, at *3 (D. Or. Oct. 14, 2008) ("[P]laintiff need demonstrate only a reasonable basis for a claim that the employer acted on a class-wide basis . . . . This burden can be satisfied by a modest factual showing that plaintiffs and potential plaintiffs were victims of a common policy or plan that violated the law.") (simplified). The Court finds that Atkins has sufficiently alleged a single, FLSA-violating policy which satisfies the "lenient" similarly situated standard at this preliminary stage of the litigation.[3] *See Campbell*, 903 F.3d at 1109 (explaining that the district court's "level of consideration [at step one] is lenient") (simplified); *Chastain*, 2014 WL 3734368, at *2 (explaining that a district court's step-one inquiry "typically results in

---

[3] At oral argument, Defendants emphasized that Atkins participated in a support staff tip pool, which VCE administered differently than the bar and kitchen staff tip pools. However, counsel acknowledged that Defendants' own proposed collective definition similarly did not account for multiple tip pools. (*See* Defs.' Resp. at 5, "Defendants are willing to stipulate to conditional certification of a collective class . . . defined as 'any current or former hourly, non-management employees of VCE who either paid into or received payments out of any tip pool as a result of their employment with VCE.'")

certification") (simplified); *see also Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 949 (9th Cir. 2019) (affirming preliminary certification of a collective action because the "plaintiffs allege a single, FLSA-violating policy . . . and argue a common theory of defendants' statutory violations" which "are 'similar issues of law or fact material to the disposition of their FLSA claims,' thus making plaintiffs 'similarly situated'" (quoting *Campbell*, 903 F.3d at 1117)) (simplified); *Hunter v. Legacy Health*, No. 3:18-cv-02219-AC, 2021 WL 24553, at *7 (D. Or. Jan. 4, 2021) (preliminarily certifying a collective action because the plaintiff sufficiently alleged a common scheme in which the employer uniformly failed to pay non-exempt employees for work performed off the clock or during shift breaks); *cf. Brinkmann v. ABM Onsite Servs.-West, Inc.*, 3:17-cv-00275-SI, 2021 WL 3932040, at *10 (D. Or. Sept. 2, 2021) (certifying a FLSA collective for settlement and finding that the members were "similarly situated" because they "were all employed by ABM while the disputed pay practices were in use and received paychecks that were allegedly illegally calculated" which means that "they are alike in a way that is material to the disposition of the FLSA claims").

### 2.    Notice Time Period

Atkins includes in his motion for certification a request "that notice be sent to all employees since [VCE] opened in 2019, so that employees employed more than three years ago will be able to preserve their claims and pursue discovery regarding the proper application of tolling to their cases." (Atkins' Mot. at 4.) Atkins further requests that the Court toll the statute of limitations from the date Atkins filed his motion until the earlier of the date a member files their opt-in, or the expiration of the opt-in period. (*Id.*)

Historically, "[t]he doctrine of equitable tolling applies where the plaintiff has 'excusable ignorance of the limitations period' and there is a 'lack of prejudice to the defendant.'" *Chastain*, 2014 WL 3734368, at *8 n.2 (quoting *Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007)).

"[T]he doctrine of equitable estoppel 'focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.'" *Id.* (quoting *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011)). The Ninth Circuit has collapsed the distinction at times, *see, e.g.*, *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), but the Court here analyzes both doctrines in light of the issues Atkins raises in his motion.

### a.    Equitable Tolling

Atkins moves for an order tolling the statute of limitations for potential collective members from the date Atkins filed his motion for preliminary certification (i.e., August 8, 2024) until the earlier of the date a member opts in or the expiration of the opt-in period. (Atkins' Mot. at 4-6.) Defendants do not oppose tolling the statute of limitations, but only from the date Atkins filed his motion (i.e., August 8, 2024) until the date the Court approves the notice. (Defs.' Resp. at 8-9.)

A FLSA action must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ." 29 U.S.C. § 255(a). A collective member's action is "commenced" when the individual files with the court a written consent to become a party. 29 U.S.C. § 256(b). "[U]nlike a Rule 23 class action, . . . for opt-in plaintiffs . . . the statute of limitations continues to run until the individual opt-in plaintiff files the consent form with the Court." *Chastain*, 2014 WL 3734368, at *12 (citing 29 U.S.C. § 256(b)).

"The Ninth Circuit [has] held . . . that the FLSA statute of limitations c[an] be equitably tolled." *Dualan v. Jacob Transp. Servs., LLC*, 172 F. Supp. 3d 1138, 1153 (D. Nev. 2016) (citations omitted). "Even where no party has engaged in wrongful conduct . . . courts have equitably tolled the statute of limitations in a FLSA action when doing so is in the interest of justice." *Winningham v. Rafeal's Gourmet Diner, LLC*, No. 6:22-cv-00382-MK, 2022 WL

18359485, at *2 (D. Or. Dec. 19, 2022) (simplified), *findings and recommendation adopted*, 2023 WL 197005 (D. Or. Jan. 17, 2023). Courts recognize that tolling is appropriate where delays in resolving conditional certification is not the fault of the putative collective members. *See, e.g.*, *Hollis v. R & R Rests., Inc.*, No. 3:21-cv-00965-YY, 2022 WL 1656722, at *2 (D. Or. May 2, 2022) (collecting cases), *findings and recommendation adopted*, 2022 WL 1645657 (D. Or. May 24, 2022).

      Defendants do not oppose tolling the statute of limitations from the date Atkins filed his motion (*see* Defs.' Resp. at 8-9, "Defendants do not oppose tolling the statute of limitations from the date [Atkins] filed the Motion . . . ."), and the Court agrees that August 8, 2024 is an appropriate tolling start date.

      With respect to the tolling end date, Defendants ask the Court to end tolling on the date the Court approves the collective notice (Defs.' Resp. at 8-9), but this end date unfairly penalizes the putative collective members for any unavoidable delay in administering the notice. Atkins asks the Court to toll the statute until the end of the notice period, but the Court agrees with other courts that have recognized that such extended tolling is contrary to Congress's intent. *See Hollis*, 2022 WL 1656722, at *2 ("Equitably toll[ing] the FLSA's statute of limitations until the end of the notice period . . . would completely eviscerate Congress's intent in creating a distinct statute of limitations that . . . is uniquely tolled 'on the subsequent date on which such written consent . . . is filed in the court . . . .'" (quoting 29 U.S.C. § 256(b))); *Winningham*, 2022 WL 18359485, at *2 (same); *Begley v. JK Enter. Inc.*, No. 3:21-cv-01031-YY, 2022 WL 1609234, at *2 (D. Or. Apr. 29, 2022) (same), *findings and recommendation adopted*, 2022 WL 1604986 (D. Or. May 20, 2022).

///

Judges in this district consistently toll the FLSA's statute of limitations until the date on which notice is issued to collective members, which the Court agrees is the appropriate result here.[4] *See, e.g.*, *Winningham,* 2022 WL 18359485, at *2 ("It is just and appropriate to equitably toll the statute of limitations . . . [until] the date on which notice is issued to potential collective action members."); *Hollis,* 2022 WL 1656722, at *2 (same); *Begley*, 2022 WL 1609234, at *2 (same). On the notice date, putative collective members are aware of their right to opt in to the collective and any delay in filing their opt-in notice is under their own control.

For these reasons, the Court equitably tolls the relevant statute of limitations from August 8, 2024, until the date on which the administrator issues notice to the putative collective members.

**b.    Equitable Estoppel**

Atkins also requests an order authorizing notice to all VCE employees within the collective definition dating back to 2019, on the ground that Defendants allegedly concealed their tip pool fund policy, which may justify applying equitable estoppel for claims outside of FLSA's three-year statute of limitations.[5] (Atkins' Mot. at 4.) Defendants stipulate to FLSA's

---

[4] The Court notes that tolling is equitable here in part because of Defendants' unwillingness to produce certain discovery until after the Court preliminarily certifies the collective, as more transparent discovery would have allowed earlier preliminary certification of a more targeted collective. (*See, e.g.*, Lewallen Decl. Supp. Atkins' Mot. ("Lewallen Decl."), Ex. 4 at 4, 8-10 (Defendants objected to Atkins' Request for Production Nos. 2, 13, and 18 in part because "this Request [i]s untimely and premature as no class or collective action has been certified")); *see also Chastain*, 2014 WL 3734368, at *11-12 (applying equitable tolling in part because the defendants refused to produce pre-certification discovery (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007))).

[5] Atkins acknowledged in his reply that determining whether equitable estoppel "will or will not ultimately be deemed appropriate for any given collective member . . . is an issue for the trier of fact" but "[i]n order to identify and send out notice to those who may have a claim, we have to take those allegations into account . . . ." (Atkins' Reply at 8-9.)

three-year temporal limitation period because Atkins has alleged willful violations (Defs.' Resp. at 6), but oppose Atkins' request to send notice to all potential collective members dating back to 2019 because there are no extraordinary circumstances justifying such a broad extension. (Defs.' Resp. at 7.)

To support the application of equitable estoppel, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1052 (9th Cir. 2008) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)) (simplified).

Atkins bases his FLSA claim on Defendants' allegedly illegal policy relating to distributing tip pool funds. (Compl. ¶ 27.) However, Atkins further plausibly alleges that Defendants repeatedly deflected his requests for tip pool accountings in an attempt to conceal the illegal policy, and that VCE ultimately terminated him in retaliation for his inquiries. (*See* Atkins Decl. at 2-4; Compl. ¶¶ 10-12.) At this preliminary stage, Atkins has made a sufficient showing that collective members may be entitled to equitable estoppel. *See Cooley v. Air Methods Corp.*, No. CV-19-00850-PHX-DLR, 2020 WL 9311858, at *3-4 (D. Ariz. Sept. 25, 2020) (preliminarily certifying a collective despite the "Plaintiffs' overall success [being] dependent on the success of their equitable estoppel claim" because "Plaintiffs have made a prima facie case of equitable estoppel"); *Chastain*, 2014 WL 3734368, at *8 ("The potential application of [equitable estoppel] leads the Court to conclude that a more inclusive statute of limitations should be used in this case."). Whether equitable estoppel applies to a collective member's claim is an inquiry more appropriately addressed at the next stage of litigation. *See Terry v. Hodges*, No. 6:22-cv-01668-AA, 2024 WL 95104, at *5 (D. Or. Jan. 9, 2024) (rejecting the defendant's

objection to sending notice to potential collective members whose claims were time-barred and finding "[t]he Court is satisfied that the proper approach [is] to be as inclusive of potential plaintiffs as possible at the notice stage and that any time-barred claims may be addressed if and when the plaintiffs advancing time-barred claims join the litigation"); *see also Campbell*, 903 F.3d at 1110 ("[T]he two-step process . . . has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record.").

Accordingly, the Court grants Atkins' request to issue notice to all potential collective members dating back to VCE's opening in 2019.

### 3.    Notice

Defendants oppose Atkins' proposed notice in its current form and request that the Court order the parties to meet and confer so that the parties can "present a new negotiated proposed notice aligned with the Court's ruling." (Defs.' Resp. at 9.) The Court grants Defendants' request and orders the parties to meet and confer on the issues Defendants raise and to present the Court with a negotiated proposed notice. *See Estrada v. Avalon Health Care Hearthstone, LLC*, No. 1:21-cv-00688-CL, 2023 WL 8809734, at *12 (D. Or. Nov. 29, 2023), *findings and recommendation adopted*, 2024 WL 4235166 (D. Or. Sept. 19, 2024) (preliminarily certifying a collective and directing the parties "to confer regarding notice content and process"); *Cooley*, 2020 WL 9311858, at *5 (preliminarily certifying a collective action and ordering the parties "to meet and confer to draft joint proposed notice and consent-to-join forms" that will "ultimately [be] approved by the Court"); *Heath v. Google*, 215 F. Supp. 3d 844, 859 (N.D. Cal. 2016) (ordering, at the defendant's request, that the parties meet and confer to address the defendant's objections to the contents of the plaintiffs' proposed notice with an instruction to "provide the Court with a status update").

///

### 4.    Conclusion

The Court concludes that Atkins has satisfied the requirements for preliminary certification of a FLSA collective action, and therefore grants Atkins' motion for preliminary certification. *See Cooley*, 2020 WL 9311858, at *2 ("The allegations [for preliminary certification] need be neither 'strong nor conclusive;' Plaintiffs need only show 'that there is some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice.'" (quoting *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010))); *see also Campbell*, 903 F.3d at 1109 (explaining that the district court's "level of consideration [at step one] is lenient") (simplified); *Chastain*, 2014 WL 3734368, at *2 (explaining that a district court's step-one inquiry "typically results in certification") (simplified).

## CONCLUSION

For the reasons stated, the Court GRANTS Atkins' motion for preliminary certification (ECF No. 13), except where noted above, and:

(1)    approves Atkins' modified proposed collective definition: current or former VCE employees who received a paycheck for a pay period in which they were required to participate in a tip pool;

(2)    equitably tolls the relevant statute of limitations from August 8, 2024, until the date on which the administrator issues notice to the putative collective members;

(3)    approves sending the collective notice to all putative collective members dating back to VCE's opening in 2019;

(4)    appoints Shanti Lewallen of Lewallen Law, LLC as counsel for the collective;

///

///

(5)    orders Defendants to produce the names, last known addresses, telephone numbers, and email addresses for all putative collective members within fourteen (14) days of this Order;

(6)    authorizes a sixty-day opt-in period for putative collective members to postmark their written consents to join the collective;

(7)    stays current pretrial deadlines pending a scheduling conference to determine new deadlines; and

(8)    orders the parties to meet and confer regarding the contents of the notice to align with the Court's rulings herein and to present the Court a negotiated proposed notice to putative collective members within fourteen (14) days of this Order (or, if there are any provisions about which the parties are unable to agree, the parties shall inform the Court of any remaining disputes via email at sbpropdoc@ord.uscourts.gov, and the Court will resolve the remaining disputes on the parties' prior briefing).

**IT IS SO ORDERED.**

DATED this 14th day of November, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 17 – OPINION AND ORDER